IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| LISA POTTER for | ) | |
| MICHAEL DANIEL POTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-518 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of a cessation of child's Supplemental Security Income ("SSI") benefits. For the reasons provided herein, defendant's motion for summary judgment [doc. 22] will be granted, and plaintiff's motion for summary judgment [doc. 20] will be denied.[1] The final decision of the Commissioner will be affirmed.

I.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C.

---

[1] The claimants, Michael Daniel Potter and his mother Lisa Potter, will hereinafter be referred to as "Michael" and "Mrs. Potter," or collectively as "plaintiff."

§ 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). If found disabled, the continuing eligibility of a child must be reviewed periodically. 20 C.F.R. § 416.994a(a). To determine whether the child remains disabled, the Commissioner conducts a three-step evaluation:

> 1. Has there been medical improvement (defined as "any decrease in the medical severity of [the claimant's] impairment(s)[.]")? If not, the disability continues (subject to exceptions not presently relevant). 20 C.F.R. § 416.994a(b)(1), (c).
>
> 2. If there has been medical improvement, does the child's impairment(s) nonetheless still meet or equal the listed impairment that it met or equaled before? If so, the disability continues. 20 C.F.R. § 416.994a(b)(2).

3. If the child no longer meets or equals the original listed impairment, is the child otherwise currently disabled? At this step, the Commissioner considers all existing impairments. If any of the impairments are found to be severe, the child remains disabled if he either: (1) meets or equals a listed impairment; or (2) "functionally equals" a listed impairment. If the child does not meet, equal, or functionally equal a listed impairment, the Commissioner concludes that the disability has ended. 20 C.F.R. § 416.994a(b)(3).

At issue in the present appeal is whether Michael's impairments "functionally equal" a listing. In determining functional equivalence, the Commissioner assesses the limitations caused by all severe and "nonsevere" impairments. 20 C.F.R. §§ 416.994a(b)(3)(iii), 416.926a(a). To be found disabled under the functional equivalence standard, a child's impairments must cause either: (1) an "extreme" limitation in one of the following six "domains of functioning"; or (2) "marked" limitations in two of the domains. 20 C.F.R. 416.926a(a).[2]

    1. Acquiring and using information;

    2. Attending and completing tasks;

    3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

    6. Health and physical well-being.

*Id*.

---

[2] A "marked" limitation "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

II.

*Procedural History*

Michael was born on December 21, 1997. Mrs. Potter applied for SSI benefits on Michael's behalf in July 1998. [Tr. 49]. In January 1999, the Commissioner found Michael disabled due to asthma (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03B),[3] and awarded benefits effective July 1, 1998. [Tr. 49, 62].

On April 1, 2002, the Commissioner issued a Notice of Disability Cessation, concluding that "[t]he medical evidence shows that [Michael's] health has improved and [he] no longer meet[s] the disability requirements[.]" [Tr. 69]. Mrs. Potter requested reconsideration. [Tr. 67]. Upon reconsideration, the Commissioner again concluded that Michael was no longer disabled due to medical improvement. [Tr. 58-66].

Mrs. Potter then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on January 29, 2004. [Tr. 34]. On May 14, 2004, the ALJ issued a decision affirming the cessation of benefits. [Tr. 13]. In material part, the ALJ found that:

---

[3] "Attacks ... in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03B.

4

> 1. There has been medical improvement in Michael's condition.
>
> 2. Michael suffers from chronic asthma, constipation, and tracheomalacia, which are "severe" impairments.[4]
>
> 3. Michael's impairments do not meet, nor are they functionally equal to, a listed impairment.
>
> 4. "The testimony by the claimant's mother is found to be not wholly credible and not entirely supported by the medical evidence."
>
> 5. Michael is no longer under a disability, and the cessation of benefits is therefore proper.

[Tr. 19-20].

Mrs. Potter then sought review from the Commissioner's Appeals Council. Review was denied on August 13, 2004. [Tr. 6]. The ALJ's ruling therefore became the Commissioner's final decision, *see* 20 C.F.R. § 416.1481, and the case is now before this court. *See* 42 U.S.C. § 405(g).

III.

*Analysis*

A. Pediatrician Review

Plaintiff first argues that the ALJ breached his duty to "make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the child's impairments will evaluate the case of the child." [Doc.

---

[4] Tracheomalacia is a "softening of the tracheal cartilages, often as a congenital condition in infants or in patients of any age after prolonged intubation, and usually accompanied by a barking cough and expiratory stridor or wheezing[.]" *Dorland's Illustrated Medical Dictionary* 1858 (29th ed. 2000).

5

21, p. 14]. In support of this contention, plaintiff cites section "D1 [sic] 24001.020" of the Commissioner's Program Operations Manual System. That section, however, concerns the distinction between substantial gainful activity and unsuccessful work attempts. Because Michael has never worked, and because this section pertains in no way to the review of children's medical records, DI 24001.020 is not relevant to the present case.

The pertinent authority is instead 20 C.F.R. § 416.903, which provides in material part that

> In making a determination under title XVI with respect to the disability of a child [who is not alleging a mental impairment], we will make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the child's impairment(s) evaluates the case of the child.

20 C.F.R. § 416.903(f). Two doctors reviewed Michael's file and completed Childhood Disability Evaluation Forms consistent with the ALJ's decision. [Tr. 318-24, 389-95]. Through her summary judgment brief, the Commissioner has directed the court's attention to the State of Tennessee's website for licensure verification. The website shows that at least one of the two reviewing physicians, Dr. Celia M. Gulbenk, is a pediatric specialist. *See* http://www2.state.tn.us/health/licensure (searching by last name "Gulbenk") (last visited Oct. 21, 2005). Plaintiff's argument (that a pediatrician did not review Michael's case) accordingly fails.[5]

---

[5] The court further observes that Michael's file contains the records of a pediatric gastroenterologist, a pediatric pulmonologist, a pediatric otolaryngologist, a pediatric clinic, and two children's hospitals. [Tr. 174-87, 192-217, 222-317, 346-48, 397-407, 412-443].

B. The Domains

In conducting functional equivalence review, the Commissioner considers the combined effect of a child's impairments. *See* 20 C.F.R. §§ 416.924(a), 416.926a(c). Plaintiff argues that the ALJ failed to do so in the present case, thereby exhibiting "bias" against, and "unfairness" toward, Michael. [Doc. 21, p. 15-16].[6] Plaintiff states that "[w]hen the domains were [sic] considered as a whole, Michael established that he met the listing level severity." [Doc. 21, p. 20-21]. The court disagrees. Substantial evidence supports the ALJ's conclusion that Michael "does not have marked or extreme limitations in any of these domains of functioning." [Tr. 18].

Before discussing plaintiff's more specific arguments in turn, the court observes that the ALJ's decision: (1) contains repeated references to Michael's "impairments" (plural) [Tr. 16-19]; and (2) indicates that the ALJ reviewed "all of the evidence of record." [Tr. 14]. In addressing an argument remarkably similar to that now offered by plaintiff, the Sixth Circuit has stated that

---

[6] In fact, plaintiff appears to go one step further and contend, without citation to supporting authority, that it is error for an ALJ to ever consider the domains "one at a time." [Doc. 21, p. 16]. Plaintiff's position is without merit. It is not possible for an ALJ to determine whether an applicant is markedly limited in two domains, or extremely limited in one domain, unless the ALJ analyzes the domains "one at a time."

7

the decision itself suggests that the ALJ did consider the combination of impairments, as he was required to do. The ALJ's decision not to reopen Mr. Gooch's earlier application for disability benefits was made after "a thorough review of the medical evidence of record," and the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to "a combination of impairments" in deciding that Mr. Gooch did not meet the "listings." It is clear that Mr. Gooch's pulmonary impairments were considered collectively, moreover, because the ALJ specifically found that these "impairments" (plural), which the ALJ characterized as "severe," did not prevent Mr. Gooch from returning to his former work. It is true that the non-severe impairments were then discussed individually, but the ALJ can hardly be faulted for that; it was only after his canvass of all of the individual impairments that the ALJ found, "[b]ased upon the medical evidence" as [a] whole, that "the claimant retains the ability to perform his former work as a housekeeper." The specific findings with which the ALJ's decision ends were made, the ALJ says, "[a]fter careful consideration of *the entire record*" (emphasis supplied), and as the magistrate correctly observed, the ALJ made a specific finding that Mr. Gooch's "impairments" do not prevent him from performing his past relevant work. To require a more elaborate articulation of the ALJ's thought processes would not be reasonable.

*Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987). On this precedential basis alone, plaintiff's argument fails.

### 1. Acquiring and Using Information

The first domain considers how well a child acquires or learns information, and how well the child uses the information he has learned. 20 C.F.R. § 416.926a(g). The ALJ concluded that Michael "has less than marked limitations in this domain." [Tr. 17]. Plaintiff argues that Michael's speech is virtually unintelligible to non-family members, and that he is "behind for his age level" [Tr. 153] in various abilities of communication and cognition. [Doc. 21, p. 16].

8

Michael has undergone speech therapy. [Tr. 349-88]. Plaintiff incorrectly states that "[i]n the speech reports there was no measure of intelligible speech." [Doc. 21, p. 16]. As correctly cited by the ALJ [Tr. 17], the therapist noted that Michael's speech is intelligible seventy percent of the time. [Tr. 373]. The therapist opined that the reduced intelligibility was secondary only to the child's habit of playing with his tongue, teeth, or chin while talking. [Tr. 373].

The therapist also noted a "mild to moderate articulation disorder," a "moderate expressive/receptive language delay," and a "moderate-severe speech/language disorder characterized by a [decrease] in expressive and receptive language[.]" [Tr. 373, 386]. His prognosis, however, was "deemed good[.]" [Tr. 373]. Most importantly, as cited by the ALJ, Michael's kindergarten teacher stated that Michael is "*above grade level in all subject areas.*" [Tr. 396] (emphasis added).

The objective evidence of record thus substantially supports the ALJ's conclusion that Michael is less than markedly limited in this domain. As will be discussed more fully below, the ALJ did not err in discounting Mrs. Potter's subjective allegations of marked/extreme limitation.

## 2. Attending and Completing Tasks

Plaintiff correctly concedes that "[t]here is no record of marked limitations in this area[.]" [Doc. 21, p. 17]. Nonetheless, plaintiff argues that "[i]t is necessary to have an evaluation by a pediatrician who specializes in educational ability to determine whether,

9

within the school environment, the child is able to attend to and complete tasks." [Doc. 21, p. 17].

As noted above, Michael's case was evaluated by at least one pediatrician, and that evaluation considered each of the six domains. [Tr. 391-92]. Plaintiff's argument merits no further discussion.

### 3. Moving About and Manipulating Objects

The ALJ ruled that Michael "has no limitation in the domain of moving about and manipulating objects." [Tr. 19]. Plaintiff argues that movement and manipulation are limited by asthma and by the outward bending of two fingers.

The record indicates that Michael can ride a bicycle, run, and play. [Tr. 42]. Developmental milestones (sitting and walking) occurred normally. [Tr. 226].

In September 2002, Dr. David Ponder commented that Michael "has had a good summer season without requiring antibiotics or steroids." [Tr. 411]. In December 2002 and July 2003, doctors termed his asthma "stable." [Tr. 433, 436]. In November 2003, Mrs. Potter reported a recent exacerbation of asthma when Michael "ran and played a lot." [Tr. 431].

Michael was born with seven fingers on each hand. [Tr. 167]. He has undergone successful surgeries to remove the extra digits. [Tr. 225-31, 234-38]. Shriner's Hospital has reported that Michael "recovered well from these surgeries." [Tr. 253]. In June 2002, the surgeon wrote that Michael was "doing excellently." [Tr. 427]. In June 2003, Mrs.

10

Potter "report[ed] no problems," and the surgeon noted no marked abnormalities. [Tr. 425].

The court cannot necessarily agree with the ALJ that Michael has "no limitation" in the domain of moving about and manipulating objects. Nonetheless, the evidence of record (hands with "no marked abnormalities" and "no problems," plus a purported restriction in running and playing "a lot") substantially supports the conclusion that Michael does not suffer from marked or extreme limitation in this domain.

### 4. Remaining Domains

As to the third, fifth, and sixth domains, the ALJ found that Michael:

1. has no limitation in the domain of interacting and relating with others;

2. has less than marked limitation in the domain of caring for himself; and

3. has less than marked limitation in the domain of health and physical well-being.

[Tr. 19]. In alleging error, "unfairness," and "bias" regarding the analysis of these domains, plaintiff essentially relies on the testimony and claims of Mrs. Potter, which the ALJ "found to be not wholly credible and not entirely supported by the medical evidence." [Tr. 19]. As indicated by the following examples, substantial evidence supports the ALJ's credibility finding.

First, and most importantly, Mrs. Potter claims that Michael is disabled by an impaired immune system. [Tr. 31, 39, 45-46, 110, 133-34, 137, 147, 152, 156, 158]. She states that he is unable to be around other children without getting sick, resulting in homebound academic status due to twenty school absences caused by the purportedly

11

disabling immune deficiency. [Tr. 39-41, 143-44, 147, 152, 158, 163]. Plaintiff argues that the resulting social isolation produces marked and extreme limitations across the domains.

Results of immune system testing in the spring and fall of 2001 by Dr. Ponder were "slightly low." [Tr. 327, 328]. Michael was noted to have done "fairly well" to "quite well." [Tr. 327-28, 330]. January 2000 test results were "low" and "slightly low," but Michael did "not have a history of systemic nor opportunistic infections." [Tr. 333]. Dr. Ponder's recommendations have traditionally concerned *"environmental* control measures" and *"environmental* protection," which he describes as *"conservative* management." [Tr. 328, 330-31, 410-11] (emphasis added). Dr. Ponder has "discussed environmental control with avoidance of respiratory irritants in general. I have stressed the [need] for there to be no smoking in the house or in the car." [Tr. 333]. Although Michael was hospitalized with pneumonia in 2003, immunoglobulin testing at that time was actually "normal." [Tr. 409]. In August 2003, Dr. Ponder stated that "Michael has done quite well in the past year. . . . He has not had systemic/opportunistic infections and has apparently had normal growth and development." [Tr. 410]. In sum, the objective record clearly evidences that Michael should avoid "*environmental*" irritants - namely his parents' smoking [Tr. 333] - but does not support the allegation that Michael must avoid *other people*.[7]

---

[7] The file contains a letter written by Michael's kindergarten teacher, who states in part that "[h]e seems to be more susceptible to illnesses and viruses than most children. He also has a harder time combating these." [Tr. 396]. While this letter is consistent with Mrs. Potter's testimony, it is unclear to what extent the teacher's immunity-related observations are merely a recitation of Mrs. Potter's claims. In any event, the teacher's observations on this point - like Mrs. Potter's testimony -
(continued...)

12

Mrs. Potter also alleges that Michael suffers from disabling constipation. [Tr. 40-41, 110, 137, 144]. The medical evidence, however, *strongly* suggests that this issue is dietary in origin. On January 11, 2000 (when Michael was **_barely two years old_**), pediatric gastroenterolgist Cory Strobel wrote that "In reviewing his dietary intake, he obviously has very low fiber consumption and increased fat, with a preference for Hardee's gravy and biscuits, cream style corn, macaroni and cheese, and hamburger pizza with extra cheese." [Tr. 312]. Mrs. Potter received counseling from Dr. Strobel's dietician because Michael "certainly has significant dietary factors that can influence his problems." [Tr. 312]. In November 2001, Dr. Strobel again wrote that "His constipation is probably less than adequately managed at present . . . . He . . . is to work harder at improvements in dietary fiber consumption[.]" [Tr. 305]. Mrs. Potter was instructed to complete and return a food record "to assess compliance" with the doctor's instructions, but no such record appears in the administrative file. In April 2003, Michael's "usual foods" remained "spaghetti and pizza." [Tr. 440].

In November 2003, Dr. Strobel's office *again* attempted (without detectable success) to counsel Mrs. Potter regarding Michael's dietary intake. [Tr. 439]. The office again asked Mrs. Potter to provide a three-day diet record for nutritional analysis. [Tr. 439]. Unfortunately, Mrs. Potter (who felt that two different doctor's offices had failed to properly schedule her appointments for that date) was "very agitated" and "very irritated during our

---

[7](...continued)
lack support in the objective record.

visit." [Tr. 439]. "Indeed, when we revisited high fiber diet and asked mother to have a 3 day diet record as well as stooling record performed, ***she refused***, and left the clinic without these records." [Tr. 439] (emphasis added). Without question, Mrs. Potter's testimony on the issue of "disabling constipation" is entitled to exceedingly minimal weight.

Next, Mrs. Potter contends that Michael is "developmentally delayed" [Tr. 131, 152], resulting in marked and extreme limitations across the domains. However, as noted above, the kindergarten teacher has stated that Michael is "*above grade level in all subject areas*." [Tr. 396] (emphasis added).

Mrs. Potter further contends that Michael remains disabled by asthma. Pediatric pulmonologist John Rogers, however, has described Michael as "alert, active in good spirits, breathing comfortably . . . with a normal respiratory pattern." [Tr. 275-76, 278]. The records of Dr. Ponder, as discussed above, also indicate that Michael's asthma is not as severe as alleged.

As illustrated by these examples, substantial evidence supports the ALJ's conclusion that Mrs. Potter's claims are "not wholly credible and not entirely supported by the medical evidence." [Tr. 19]. Substantial evidence in turn supports the finding of no marked or extreme limitation in any domain. Although a different decisionmaker might have chosen to credit Mrs. Potter's various claims, that is not the standard of review binding this court. An administrative decision cannot be reversed merely because *some* evidence would have supported an opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.

1986).

The final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan  
United States District Judge